IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARTHUR EUGENE JOHNSON,

    Petitioner,                    No. CIV S-09-0850 JAM GGH P

    vs.

JAMES A. YATES, et al.,

    Respondents.                FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court is respondent's June 10, 2009, motion to dismiss on grounds that this action is barred by the statute of limitations. Per the Order, filed on December 11, 2009, further briefing has been submitted with regard to the application of the triggering date of the AEDPA statute of limitations being the date the factual predicate of the claims was discovered. U.S.C. § 2244(d)(1)(D).[1]

\\\\\

---

[1] Respondent's supplemental briefing was filed timely on December 22, 2009; petitioner was granted an extension of time but informed that no further extension could be granted for him to file a response due to the exigencies of the court's calendar. See Orders, filed on January 8, 2010, and January 12, 2010. When petitioner nevertheless sought a further extension of time, the further request was denied. See Order, filed on January 30, 2010.

1

As previously set forth, petitioner, serving a 59-year-to-life sentence, challenges his 2005 conviction for attempted murder and possession of a firearm by a felon. Petitioner specifically was found to have "personally used a firearm" but was not found to have "personally and intentionally discharged a firearm ... which proximately caused great bodily injury to Clifton Whitehorn...." nor was he otherwise found to have "personally and intentionally discharged a firearm...." Supplemental Briefing, Exhibit A (court doc. 22-2, pp. 2, 5). The petition raises the following claims, largely based on newly discovered evidence: 1) ineffective assistance of trial counsel when counsel failed to interview Romeo Brown about his possible role in the shooting of Clifton Whitehorn; 2) ineffective assistance of appellate counsel for failing to investigate Brown's potential involvement in the Whitehorn shooting and for failing to impeach the victim Whitehorn with alleged evidence of his cocaine use and (in claim 2, petitioner also faulted appellate counsel for an incorrect statement in the appellate brief); 3) factual innocence. Petition, pp. 5-38.[2]

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

---

[2] As recounted in the December 11, 2009 Order at 2 and 4-5, the newly discovered Romeo Brown evidence indicated that Brown was the shooter of Whitehorn, and that he shot Whitehorn because the victim had embarrassed him. Nothing in the Brown statements contradicts in any significant way any other evidence presented against petitioner at trial.

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Respondent argues that the statute of limitations runs from the date petitioner's conviction became final pursuant to 28 U.S.C. § 2244(d)(1)(A). As previously stated, if respondent is correct, then petitioner's application is time barred by either one[3] or eight days because the petition, file-stamped March 27, 2009, was filed, by application of the mailbox rule, on March 18, 2009, or March 25, 2009, but was due by March 17, 2009, for the reasons set forth in the Order, filed on December 11, 2009, incorporated by reference herein. This deadline, however, applies only if there is no later triggering date than March 13, 2007, the date upon which petitioner's conviction became final, 90 days after the December 15, 2006, denial of petitioner's petition for review in the California Supreme Court. Respondent's Lodged Document 2. Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999). Based on that date, the statute commenced running on March 14, 2007, petitioner had until March 14, 2008, to file a timely federal petition, absent applicable tolling. However, because the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment is pending shall not be counted toward any period of limitation under this subsection, 28 U.S.C. § 2244(d)(2), the statute, as previously set forth in more detail, was tolled from September 8, 2007, when petitioner filed his habeas petition in superior court, until the date of denial of his state supreme court petition, on September 10, 2008, that is, for 368 days. Respondent's Lodged Documents 3 & 8.[4] Under this calculation then, adding 368 days to March

---

[3] Respondent notes, in supplemental briefing (at footnote 2), that petitioner did not sign the petition next to the date of March 18, 2009, so it would appear that the petition must be construed as filed on March 25, 2009, at the earliest.

[4] The Superior Court denied the petition on December 21, 2007. Respondent's Lodged Document 4. On February 15, 2008, petitioner filed a habeas corpus petition in the California

14, 2008, petitioner's federal petition would have been due March 17, 2009, and at the earliest was filed as of March 18, 2009, or more likely March 25, 2009 (see discussion on the December 11, 2009, Order).

      The court found little merit in petitioner's argument for equitable tolling or for finding a state-created impediment to filing his federal petition when he was placed in administrative segregation based on his own misconduct and was denied access to his legal property from December 16, 2008, to February 5, 2009, because any such denial of access does not explain why petitioner could not have filed his petition within the almost six weeks thereafter before the deadline elapsed. The court also did not reach the question both parties addressed regarding whether an actual innocence exception to the statute of limitations exists and, if so, whether petitioner met its requirements because the undersigned found that the appropriate date commencing the running of the AEDPA statute might well be the date upon which petitioner claims that the newly discovered factual predicate of his claims arose, pursuant to 28 U.S.C. § 2244(d)(1) (D) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

      The newly discovered evidence on which petitioner relies is "the recently discovered information in Romeo Brown's statement." Petition, p. 39. It is this individual whom petitioner has long averred is the shooter in his case but he had no statement from Brown before a private investigator, Kenneth Addison, was hired by petitioner's mother on February 2, 2006. Petition, Exhibit J-K (court file doc. # 1-2, pp. 65-68.) Attached to the petition is a letter to petitioner from Addison dated July 5, 2007. Petition, Exhibit M (court file doc. # 1-2, p. 72.) In the letter, Addison states that he is attaching "a couple of statements" that petitioner's mother asked him for. Id. Attached to the petition as Exhibits N and O are what appear to be the

---

Court of Appeal, which was denied on February 28, 2008. Respondent's Lodged Documents 5 & 6. On March 21, 2008, petitioner filed a habeas corpus petition in the California Supreme Court. Respondent's Lodged Document 7.

"statements" referred to by Addison in his letter.

The first statement is a report prepared by Addison on February 26, 2006, summarizing his interview with Quintarus Sardin. Petition, Exhibit N (court file doc. #1-2, pp. 74-75.) In this interview, Sardin stated that in October 2005 he was housed in the juvenile facility in Sacramento County. Id. During that time, he had open recreation time at the same time as Romeo Brown. Id. Brown admitted to Sardin that he was the shooter in petitioner's case. Id. Brown also told Sardin that he would have admitted his guilt at the time of petitioner's trial, but he (Brown) was the defendant in another homicide case at the time and did not want to fight two homicides at one time. Id. Sardin also said that Brown told another ward, Anthony Johnson, that he was responsible for the shooting. Id.

The second statement is a report prepared by Mr. Addison on May 8, 2007, summarizing his interview with Romeo Brown, incarcerated at Kern Valley State Prison, who the investigator reports was convicted, on March 23, 2006, of voluntary manslaughter with the use of a firearm committed in 2004, for which Brown is serving a 21-year sentence. Petition, Exhibit O (court file doc. # 1-2, pp. 77-80.) During this interview, Brown stated that he had been involved with two separate incidents involving the shooting victim in petitioner's case. Id. During these incidents, the victim physically removed a firearm from Brown's person. Id. He indicated how embarrassed he was to be disarmed by the victim in front of his friends on the day of the shooting, May 16, 2004, and, apparently reluctantly, revealed that he had then gone home to get another gun, "an AK" and then returned to the location of the shooting incident, La Fresa Court. Id. When asked whether he was responsible for the shooting of the victim in petitioner's case, Brown stated that he would provide a statement if any time he received for that crime would run concurrent with his current offense. Id. Addison mailed the reports of the Sardin and Brown interviews to petitioner on July 5, 2007. Petition, Exhibit M-O (court file doc.# 1-2, pp.71-80 ).

As stated in the prior order, filed on December 11, 2009, the claims raised in the instant petition are primarily based on the statements set forth above. Petitioner argues that he is

5

factually innocent based on these statements.  He also argues that trial counsel was ineffective for failing to investigate Brown as the actual shooter.  Petitioner argues that appellate counsel was ineffective for failing to raise an ineffective assistance of counsel claim based on trial counsel's failure to investigate Brown.

Respondent argues vigorously that petitioner was fully aware early on of the factual predicate for his claim inasmuch as he, along with other witnesses, testified at the trial that the person who shot the victim, Clifton Whitehorn, was an individual named Romeo Brown. Supplemental Briefing (hereafter, Supp.), p. 2, citing respondent's Lodged Document 1, the state court appellate opinion, at 8-9.  Thus, respondent maintains petitioner knew of the potential involvement of Brown as of May 16, 2004 (the day of the shooting), obviously long before the statute of limitations began to run, on March 14, 2007, under 28 U.S.C. § 2244(d)(1)(A).  Supp., p. 5.  Thus, respondent contends, the statement by Brown, on May 8, 2007, was simply additional evidence in support of the factual predicate of Brown's possible involvement in the shooting, but did not delay commencement of the limitations period under § 2244(d)(1)(D) because it is not all the supporting evidence of the claims but whether the factual predicate itself is known or could have been discovered through the exercise of due diligence that determines the applicability of that section. Id., citing several out-of-circuit cases, Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998) (§ 2244(d)(1)(D) does not convey a right to an extended delay – in this instance more than seven years – while a petitioner "gathers every possible scrap of evidence that might, by negative implication, support his claim"); Johnson v. McBride, 381 F.3d 587, 589 (7th Cir. 2004) ("[a] desire to see more information in the hope that something will turn up differs from "the factual predicate of [a] claim or claims" for purposes of § 2244(d)(1)(D)"); Hereford v. McCaughtry, 101 F. Supp. 2d 742, 745 (E.D. Wis. 2000) ("[t]he critical determination under § 2244(d)(1)(D), is whether the "factual predicate" for the claims (not their legal basis or all evidence supporting the claims) could have been discovered through the exercise of due diligence"). Respondent argues that petitioner was aware that Brown was a potential suspect

because he and other witnesses implicated Brown at the trial and that further evidence was discovered by his investigator during the February, 2006, Sardin interview. Supp., p. 7. Therefore, according to respondent, petitioner did not need Brown's "ambiguous" May 8, 2007, statement to file his federal petition. Id.

Respondent further argues, assuming that the factual predicate for petitioner's claims is the discovery of Brown's statement (which respondent does not concede), petitioner failed to demonstrate the requisite diligence in obtaining the statement inasmuch as petitioner's investigator did not obtain the statement until some fourteen months after obtaining the Sardin statement in late February of 2006, and Brown had been incarcerated in California from March 23, 2006, as a result of his voluntary manslaughter conviction in Sacramento County and therefore presumably should not have been hard to find. Petition, Exhibit O; Supp. p. 8, Exhibit C. Petitioner's failure to explain why the statement from Brown could not have been obtained before March 14, 2007, when the statute commences under § 2244(a)(1)(A), according to respondent, precludes the availability of § 2244(d)(1)(D) for this reason as well. Supp., p. 8. Respondent cites, inter alia, an Eleventh Circuit case for what a petitioner must demonstrate to show due diligence. Supp., p. 4, quoting, at length, Melson v. Allen, 548 F.3d 993, 999 (11th Cir. 2008) which states that the inquiry to determine due diligence must focus on "whether a reasonable investigation ... would have uncovered the facts the applicant alleges are 'newly discovered.'" That is, the due diligence test under § 2244(d)(1)(D) is an objective, not subjective one. Supp., p.4, citing Wood v. Spencer, 487 F.3d 1, 5 (1st Cir. 2007); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("the time commences when the factual predicate "could have been discovered through the exercise of due diligence," not when it was actually discovered by a given prisoner.")

Respondent notes Hasan v. Galaza, 254 F.3d 1150, 1154 n. 3 (9th Cir. 2001) chiefly for the principle that under § 2244(d)(1)(D) "[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their

7

legal significance." [Internal citation omitted]).   In Hasan, the Ninth Circuit, in an ineffective assistance of counsel claim found that where the district court looked only at the time Hasan had discovered his counsel was deficient (the first prong under Strickland[5]), but had failed to consider at what point he discovered (or could have discovered) that he had been prejudiced as a result (second Strickland prong), the case had to be remanded for a determination whether due diligence had been exercised in discovering the factual predicate of the claim.  254 F.3d at 1155.

Respondent's arguments prove too much, and overlook the fact that the *key* evidence supporting a claim might not have been available with due diligence until a time much later than the basic assertion of an "I was not the shooter" claim.  No matter how sincere one is in the assertion, the *real* factual predicate might not be known until the significant external-to-the-defendant evidence is surfaced.  This might have been one of those cases – had the shooter evidence been material.

However, the undersigned cannot overlook the fact that the claim itself is so hopeless that it is subject to summary dismissal.  The undersigned is not willing to expend more resources adjudicating a motion to dismiss based on the statute of limitations when it is fully evident that the underlying claim will not be worth the effort.  Therefore, with respect to the "actual innocence" and related ineffective assistance claims based on, "I was not the shooter– Romeo Brown was the shooter," the court turns to its merits.

Petitioner is confused with the jury verdict.  The jury did *not* find that he was the shooter; indeed, the only reasonable inference from the jury's verdict is that it believed that the prosecution had not proven beyond a reasonable doubt that someone else was not the actual shooter, i.e., the person whose weapon's bullets hit the victim.  In addition, the jury's verdict that

---

[5] "Strickland v. Washington, 466 U.S. 668, 687-91, 694, 104 S.Ct. 2052 [](1984) teaches, to establish ineffective assistance of counsel, a party must demonstrate (1) that counsel's performance was unreasonable under prevailing professional standards and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different (see also Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir.2001))."  Hasan v. Galaza, 254 F.3d at 1154.

petitioner personally used a firearm is not inconsistent with its verdict that petitioner was not the actual shooter, or that he fired a weapon at all. Thus, petitioner would have the court expend many resources to adduce at this late date that another person was the actual shooter, when that fact was known at the time of the jury verdict. This is best explained by the Court of Appeal:

> Defendant contends the evidence was insufficient to support the jury's true finding that he personally used a firearm during the attempted murder of Whitehorn. He points out that the jury found he did not personally discharge the firearm, and "there was not a scintilla of evidence that [defendant] struck Whitehorn with a firearm." Defendant's argument fails because the premise on which it is based is incorrect.
>
> Personal use of a firearm does not require that a defendant discharge the firearm or strike the victim with it. It is enough if the defendant deliberately displays the firearm to facilitate the crime. As the court held in People v. Granado (1996) 49 Cal.App .4th 317, "[W]hen a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure." (Id. at p. 325.)
>
> Here, the prosecution presented evidence that Whitehorn broke up a fight between a member of the 29th Street Crips and a member of the Bad Ass Youngsters. Thereafter, defendant, who was a Crip, handed an assault rifle to another man and repeatedly called out Whitehorn's name. The rifleman moved to a nearby tree. Defendant reached into his right back pocket and retrieved a revolver. Whitehorn ran away and when he looked back, saw the revolver in defendant's hand. When he turned forward again, he heard multiple gunshots. Based on this evidence, a rational trier of fact could find that defendant personally used the revolver to intimidate Whitehorn so that his accomplice, whom defendant had previously armed with a firearm, could shoot Whitehorn. Accordingly, there was substantial evidence to support the jury's finding that defendant personally used a firearm

People v. Johnson, 2006 WL 2395756 *11 (Cal. App. 2006).

The facts of the case reveal that Whitehorn was targeted by petitioner because he had broken up a gang fight, and retribution for this "offense" was in order. The facts also clearly indicate that petitioner took the lead in organizing the retribution, directly confronted Whitehorn, and gave the signal, "St. Louis" to the rifleman, which meant that firing should commence. Id. at *1-2. As related above, petitioner was seen brandishing his weapon and possibly firing it.

In sum, petitioner is probably correct that he was not the actual shooter whose bullets hit the victim, and positively correct that he was not the only shooter. But all this is

irrelevant to the conviction and enhancement. He was guilty of attempted murder under the facts above whether he shot or not, and was properly found to have personally used a firearm in commission of that offense. Summary dismissal of Claims 1, 2 and 3 insofar as they relate to the Romeo Brown evidence is in order.[6]

However, only the "shooter" claims above need be subject to summary dismissal. To the extent that he seeks to predicate his claim of ineffective assistance of appellate counsel for trial counsel's having failed to impeach the victim Whitehorn with alleged evidence of his cocaine use and (in claim 2, petitioner also faulted appellate counsel for an incorrect statement in the appellate brief) those claims, which have no relation to the newly discovered evidence are definitively time-barred, and petitioner makes no showing of entitlement to equitable tolling for any such sub-claims.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Insofar as Claims 1, 2 and 3 rely on the new evidence regarding Romeo Brown as being the shooter, the claims should be summarily dismissed, Rules for 28 U.S.C. § 2254 Cases, Rule 4;

2. Insofar as Claim 2 relies on alleged deficiency's of counsel outside of the Romeo Brown evidence, respondent's motion to dismiss (docket #12) on statute of limitations grounds should be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Any party may file written objections with the court and serve a copy on all parties on or before March 12, 2010.

---

[6] Petitioner does not raise an insufficiency of the evidence claim in this federal petition. Doubtful as that claim may be had it been raised, the Romeo Brown evidence does not relate to the sufficiency of the evidence claim in that sufficiency of the evidence relates to the evidence of record, and not what might be adduced outside the record. McDaniel v. Brown, __U.S.__, 130 S.Ct. 665, 671-672 (2010). Even if one could challenge the sufficiency of the evidence with later developed evidence, Romeo Brown's purported latter day admission that he was the shooter does not absolve petitioner of the crimes for which he was convicted, nor does it negate the evidence upon which petitioner was convicted.

1  Such a document should be captioned "Objections to Magistrate Judge's Findings and
2  Recommendations."  Any reply to the objections shall be served and filed within seven days after
3  service of the objections.  The parties are advised that failure to file objections within the
4  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951
5  F.2d 1153 (9th Cir. 1991).

DATED: 02/26/10                    /s/ Gregory G. Hollows
                                   _____
                                   UNITED STATES MAGISTRATE JUDGE

GGH:009
john0850.fr